UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREMAIN JONES,

        Plaintiff,                    Case No. 4:14-cv-13153
                                        Judge Linda V. Parker
v.                                 Magistrate Judge Anthony P. Patti

LYNN PARRISH, *et al.*,

        Defendants.

_____/

# REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PERMANENT INJUNCTION (DE 17)

**I.**    **RECOMMENDATION**:  The Court should DENY Plaintiff's November 24, 2014 motion for a temporary restraining order and a permanent injunction. (DE 17.)

**II.**    **REPORT**

    **A.**    **Background[1]**

    Plaintiff Tremain Vernon Jones (#412981) is currently incarcerated at the Michigan Department of Corrections (MDOC) Gus Harrison Correctional Facility (ARF) in Adrian, Michigan.  DE 31.  On August 14, 2014, while incarcerated at

---

[1] Plaintiff was a party to prisoner civil rights Case No. 2:12-cv-12541-SJM-PJK (*Jones v. Robinson, et al.*) and habeas corpus Case No. 2:08-cv-14126-LPZ-MJH (*Jones v. Lafler*).

the MDOC's Michigan Reformatory (RMI), Plaintiff filed the instant lawsuit by way of a certified complaint, *pro se,* against fifty-two (52) defendants: ten (10) from Bellamy Creek Correctional Facility (IBC), eight (8) from Macomb Correctional Facility (MRF), seventeen (17) from ARF, ten (10) from St. Louis Correctional Facility (SLF) and five (5) from Correctional Facilities Administration (CFA), as well as the MDOC itself and fellow inmate William Walter Haddix (#275324), who is currently incarcerated at Lakeland Correctional Facility (LCF).  DE 1 ¶¶ 9, 10-19, 20-27, 28-45, 46-55, 56-60.

Plaintiff's 91-page,[2] 297 paragraph complaint is divided into twelve (12) separate counts, alleging various claims against different Defendants:  fraud, denial of medical treatment, negligent misrepresentation, breach of fiduciary duty, deliberate indifference to serious medical needs, denial of access to the courts, retaliation, abuse of process, excessive use of force, cruel and unusual punishment, deliberate indifference to constitutional rights and RICO.  *See* DE 1 ¶¶ 86-285.[3]

### B.    Instant Motion

---

[2] Page numbers 28-33 (¶¶ 112-129), 35 (¶¶ 134-135), 63, 65 (¶¶ 227-228) seem to be missing from DE 1, which is 82 pages in length.

[3] This case was originally assigned to Judge Parker and Magistrate Judge Komives. DE 1.  On November 7, 2014, the case was reassigned to Magistrate Judge Hluchaniuk, and Judge Parker referred the case to Magistrate Judge Hluchaniuk for pretrial matters.  DE 14.  On January 13, 2015, the case was reassigned from Magistrate Judge Hluchaniuk to Magistrate Judge Patti.  DE 22.

As an initial matter, I note that Defendants filed three motions to sever (DEs 13, 16 and 40), which I have addressed by a separate report, recommending that they be granted in part and denied in part.  DE 41.  Specifically, I have recommended that the Court dismiss Counts Six, Seven, and Nine without prejudice, dismiss the MRF, ARF, SLF and CFA Defendants without prejudice, and allow the remaining claims to proceed only against the IBC defendants and the MDOC.  Thus, the scope of this case is currently in flux, pending the Court's review of my recommendations regarding the motions to sever.

Presently before the Court is Plaintiff's November 24, 2014 motion for a temporary restraining order (TRO) and a permanent injunction.  DE 17 at 1-13, 14-16 (Brief).  Among other things, Plaintiff claims he is being retaliated against for having filed grievances and § 1983 complaints.  DE 17 at 5 ¶ 9.  He seeks several forms of relief, asking the Court to order, *inter alia*:

- A transfer to Thumb Correctional Facility (TCF)

- Alternatively, a transfer to the Federal Bureau of Prisons' custody

- Immediate examination and treatment of his eyes, teeth, lower back and brain by a qualified specialist

- Defendants to cease and desist retaliatory conduct

- Removal of the MSP criminal investigation of Plaintiff

- Reduction of Plaintiff's security level to a II prison

3

- A CFA hold keeping Plaintiff at a Level II prison for the remainder of his sentence

- Release of Plaintiff from RMI

- Placement of Plaintiff in the general population

- Restoration of his rights and privileges

- Expungment of disciplinary convictions from Plaintiff's institutional record

- Timely execution of prescribed medical treatment

DE 17 at 11 ¶ 30.

On January 6, 2015, Magistrate Judge Hluchaniuk entered an order requiring defendants to file a response on or before February 6, 2015. A reply, if any, was to be filed on or before February 17, 2015. DE 21.

Several MDOC Defendants filed a response on January 28, 2015. DE 26. Along with their response, Defendants filed excerpts of Plaintiff's medical records under seal. *See* DE 26-5, DE 27.[4] On the other hand, Plaintiff filed his reply, with exhibits, on March 17, 2015. DE 30 at 1-20, 21-24.[5] Thus, it is tardy and will not be considered.[6]

---

[4] On January 29, 2015, the Court granted Defendants' January 28, 2015 motion for a protective order to seal documents (DE 28).

[5] Along with his reply and exhibits, Plaintiff also filed a motion for default judgment as to eleven (11) defendants (DE 30 at 25-26), notice of motion for default judgment (DE 30 at 27-28) and declaration as to military service (DE 30 at

### C.     Standard

"'The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).  The Court considers four (4) factors when deciding whether to issue a preliminary injunction:

(1)     whether the movant has a "strong" likelihood of success on the merits;

(2)     whether the movant would otherwise suffer irreparable injury;

(3)     whether issuance of a preliminary injunction would cause substantial harm to others; and

(4)     whether the public interest would be served by issuance of a preliminary injunction.

---

29-31).  Although *this* motion for default judgment was not separately docketed, Plaintiff is reminded that, on November 24, 2014, the Clerk of the Court denied a request for entry of default pursuant to 42 U.S.C. § 1997e(g) ("Waiver of reply"). (DE 18.)  Moreover, the Court's February 12, 2015 order stated that, once the scope of this case is defined, the Court will entertain a request by Plaintiff to compel defendants to answer his complaint in accordance with Fed. R. Civ. P. 7(a)(2). DE 29 at 5.  Finally, to date, five (5) defendants (Defendants Nichols, McRoberts, Jones, Long and Haddix) have yet to appear.

[6] Plaintiff's reply is dated February 23, 2015, as is the certificate of service.  DE 30 at 20, 32-33.  It is post-marked March 12, 2015 (DE 30 at 34) and was filed on March 17, 2015.  Even under the mailbox rule, Plaintiff's reply is tardy.  *Houston v. Lack*, 487 U.S. 266, 276 (1988) ("the Court of Appeals had jurisdiction over petitioner's appeal because the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (quotations and citation omitted); *see also Newsome v. Norris*, 888 F.2d 371, 373 (6th Cir. 1999).[7]  "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction."  *Leary*, 228 F.3d at 736.[8]

A preliminary injunction "is an extraordinary remedy never awarded as of right."  *Winter,* 555 U.S. at 24.  "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . . ."  *Leary*, 228 F.3d at 739.  "[T]he preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it."  *Id.* at 739 (quotations and citation omitted).

Moreover, "[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."  *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 313 (1982).  "[T]he federal equity court in fashioning a remedy must afford relief which is 'no broader than necessary to remedy the

_____

[7] Or, as the Supreme Court has more prosaically stated it, "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

[8] *See also, Certified Restoration Dry-Cleaning Network, L.L.C.,* 511 F.3d at 542 (6th Cir. 2007) ("These four considerations are 'factors to be balanced, not prerequisites that must be met.'") (internal citations omitted).

6

constitutional violation'." *Kendrick v. Bland*, 740 F.2d 432, 437 (6th Cir. 1984) (quoting *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir.1982)).

**D.   Analysis**

**1.   The attachments to Plaintiff's motion evidence some administrative history from his time at ARF during 2012 through his transfer to SLF in 2013.**

On December 17, 2012, ARF Warden Klee approved a request to have Plaintiff placed on Modified Access Status for 90 days.  DE 17-1 at 25-26; *see also* DE 17-1 at 27-28.  Plaintiff received Class II misconducts for December 28, 2012 and January 10, 2013 destruction or misuse of property.  DE 17-1 at 51-52, 55, 58, 72-73, 76, 79.

On January 17, 2013, Plaintiff received a Class I Misconduct for Possession of Dangerous Contraband, for which a hearing was conducted on January 29, 2013. Plaintiff was found guilty and given 7 days of top lock and 20 days loss of privileges.  DE 17-1 at 37, 41-42, 63.  On January 30, 2013, while incarcerated at ARF, Plaintiff filed some type of civil rights violation complaint, seemingly against several ARF defendants.  *See* DE 17 at 52-97.

Plaintiff was assessed thirty (30) days of telephone restriction – from January 28, 2013 through February 28, 2013 – for violation of MDOC PD 05.03.130 ¶ HH.  DE 17-1 at 71.  At some point, a one year phone restriction and a permanent phone restriction were requested to the Regional Prison Administrator

(RPA).  DE 17-1 at 54, 56-57, 70, 74-75, 77-78.  It appears the telephone restriction was increased to 365 days following a February 7, 2013 hearing.  *See* DE 17-1 at 49-50, 53.

On May 12, 2013, ARF issued a Critical Incident Report involving Plaintiff Jones and Defendant Haddix, his fellow inmate.  DE 26-2 at 2-3.  Plaintiff claims he was brutally assaulted on this same date by prison staff and placed into segregation.  *See* DE 17 at 3-4 ¶ 6, DE 1 at 54-55 ¶ 221-222.  The following day,  a misconduct report, alleging assault and battery and sexual assault by Jones against Haddix, was issued.  DE 17 at 39-40.  In addition, it appears that Plaintiff requested protective custody.  *See* DE 26-3 at 2, 7.

On May 22, 2013, a Class I Misconduct Hearing took place.  Hearing Officer Jacobsen noted Plaintiff's comment that "he was thinking about the time frame and he was ill during the last couple of weeks, with a lay-in, no work, etc." However, the charges were dismissed for lack of proper notice.  DE 17 at 35-38. Still, on that same date, Plaintiff was placed into administrative segregation pending a Michigan State Police (MSP) investigation for alleged criminal sexual conduct.  DE 17 at 41-42, DE 26-4 at 2.

A segregation classification hearing took place at ARF on June 3, 2013; Hearing Officer Jacobsen found that Plaintiff was "under investigation by an outside police agency for suspected felonious behavior.  Due to the seriousness and

type of charges, placement in segregation appears reasonable." DE 17 at 44-45.

Approximately one week later, on June 11, 2013, Plaintiff was transferred from

ARF to SLF Level IV administrative segregation per the Security Classification

Committee (SCC). DE 17 at 46-47. Plaintiff's June 13, 2013 True Security Level

(Departure) was II, and his June 30, 2014 Actual Placement Level (Waiver) was

IV. DE 17 at 50-51.

> ## 2. Given his recent transfer to ARF, Plaintiff's November 24, 2014 motion for injunctive relief is moot as to all other prison facilities in which he was housed.

It seems that Plaintiff was transferred to RMI on or about July 3, 2014. DE

17 at 48-49. Shortly thereafter, on August 14, 2014, he filed the instant lawsuit.

DE 1. During October 2014, Plaintiff submitted written requests to be moved to

G-Block and to be transferred from Level IV and reduced to a Level II security

prison. DE 17 at 25-29, 30-34. On November 10, 2014, Plaintiff's complaint of

false allegations on the part of MDOC employees was referred to the MDOC's

Internal Affairs Section for review. DE 17 at 43.

Plaintiff filed the instant motion for injunctive relief on November 24, 2014,

while still incarcerated at RMI. DE 17 at 13. However, "[a] prisoner's request for

injunctive and declaratory relief is moot upon his transfer to a different facility."

*Parks v. Reans*, 510 F.App'x 414, 415 (6th Cir. 2013); *see also Kensu v. Haigh*, 87

F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive

relief his claims are now moot as he is no longer confined to the institution that searched his mail.").

On or about May 5, 2015, Plaintiff was transferred back to ARF.  DE 31 at 3.  Thus, only requests for injunctive relief from one of the seventeen (17) ARF defendants or Defendant MDOC should be entertained.  In other words, to the extent Plaintiff's November 24, 2014 motion for injunctive relief sought such relief from an RMI employee or one of the IBC, MRF or SLF Defendants, it was rendered moot by Plaintiff's apparent May 5, 2015 transfer to ARF.

Moreover, the scope of this case is currently in flux.  If Judge Parker accepts my recommendation, the remaining claims will proceed only against the IBC Defendants (McKee, Schooley, Kimball, Bolton, Bradley, Franks, Parrish, Maynard, Ryans and Walker) and Defendant MDOC.  Thus, to the extent Plaintiff is seeking injunctive relief against an ARF Defendant (such as ARF Warden Paul Klee), or against Defendant MDOC with respect to its role at ARF (DE 17 at 11 ¶ 28), it is possible the Court's disposition of the motions to sever will result in Plaintiff's need to file his requests for injunctive relief in another case.  As my August 12, 2015 report states, the law is clear, under Fed. R. Civ. P. 21, that unrelated claims by prisoners against different defendants belong in different lawsuits.  (DE 41 at 10.); *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). And, as the MDOC Defendants note, the Court does not have jurisdiction to enjoin

the actions of a non-defendant.  DE 26 at 10; *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.  The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.") (internal citation omitted).

     **3.**     **Even if the Court permits the ARF Defendants to remain in this case, Plaintiff's motion for injunctive relief should still be denied to the extent it seeks relief from an ARF Defendant or Defendant MDOC.**

     **a.**     **Likelihood of success on the merits**

The MDOC Defendants argue that "Plaintiff has not shown a likelihood of success on the merits."  DE 26 at 9-10.  "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. Of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The uncertain scope of this case affects the claims regarding which the Court must consider Plaintiff's likelihood of success.  Nonetheless, here, I will assume that the Court has accepted my recommendation as to the scope of this case; namely, only certain claims against IBC Defendants and Defendant MDOC regarding Plaintiff's October 22, 2011 seizure and Defendant Parrish's alleged

11

failure to seek medical care for Plaintiff while he was housed at IBC (see DE 41 at 9) are currently before the Court.

The Court need not opine as to this factor at this point.  Even if there were a strong likelihood of success on the merits as to Plaintiff's claims against the IBC Defendants and Defendant MDOC related his October 22, 2011 seizure, I am not convinced that the issuance of an injunction now as to Plaintiff's medical treatment and transfer would "preserve the relative positions of the parties" as to Plaintiff's claims from 2011. *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 542.  In essence, this claim is stale, the events at issue being too temporally remote.

### b.    Irreparable injury

The MDOC Defendants argue that "[t]here is no present threat of irreparable harm."  DE 26 at 10-15.  At the outset, the MDOC Defendants urge the Court to presume that "state officials will act in good faith [and] conduct themselves in accordance with the requirements of the Constitution."  DE 26 at 10-11.[9]  Among other things, Plaintiff describes current problems with his teeth, lower back, vision,

---

[9] *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981) ("courts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system: to punish justly, to deter future crime, and to return imprisoned persons to society with an improved change of being useful, law-abiding citizens.").

and forms of "continued physical and mental pain . . . [,]" as well as the possibility of an acute epileptic seizure.  DE 17 at 7-9 ¶¶ 18-25.

"The district court should grant an injunction only where the dilemma is ripe for judicial resolution, and a matter is considered premature for judicial review when the alleged injury is speculative or may never occur."  *Sharpe v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003) (quotation and citation omitted).  Keeping this in mind, the factor of whether Plaintiff would otherwise suffer irreparable injury if the Court did not grant the requested injunctive relief as to his medical treatment does not weigh in Plaintiff's favor.

Plaintiff claims that, once transferred to ARF, he was placed in fear, and Plaintiff seems to allege his January 30, 2013 civil rights violation complaint (DE 17 at 52-97) eventually resulted in a false accusation of assault and battery and sexual assault, as well as a brutal beating.  DE 17 at 9-10 ¶ 26, DE 17 at 20-21 ¶¶ 8-9.  According to Plaintiff, he was brutally assaulted by prison staff on May 12, 2013 and has not been provided appropriate medical treatment, vaguely claiming that "there is an informal policy within, and throughout Defendant MDOC, IBC, ARF and SLF to giving low priority to the medical needs of inmates and of refusing to provide them with medical care outside the prison unless their medical condition is life-threatening."  DE 17 at 3 ¶ 6, DE 17 at 7 ¶ 14; *see also* DE 17 at 22 ¶ 11, DE 17 at 24 ¶ 18.  Plaintiff avers that, following the May 12, 2013 assault

13

at ARF, he was not taken to an emergency room or an outside hospital but was left on the floor in segregation in pain and suffering.  DE 17 at 4-5 ¶ 8, DE 17 at 21 ¶ 10.

Plaintiff alleges that he has "specialized medical needs that warrant an evaluation by a qualified medical practitioner , and . . . a prescription for a plan of treatment" and specifically claims that the medical directions and requests of SLF medical staff, presumably from 2013-2014, are not being followed.  DE 17 at 5-6 ¶¶ 10-13; *see also*, DE 17 at 23 ¶¶ 12, 14-17.  Plaintiff "is in serious fear for his LIFE, health, safety and well-being," seemingly avoiding the prison yard, which results in him not eating regularly.  DE 17 at 22 ¶ 13.  He also describes threats he has received, with particular reference to the aforementioned October 2014 requests for transfer which were made while Plaintiff was still incarcerated at RMI. DE 17 at 4 ¶ 7, DE 17 at 25-29, 30-34.

Plaintiff wishes to ensure that "he receive necessary medical care for his acute epileptic seizures, and the protection from physical harm and injury from the defendants and/or any of their prison-hired 'hit men' while confined under their jurisdiction, care, custody and supervision."  DE 17 at 2 ¶ 2.

However, as noted above, it appears that Plaintiff was placed into ARF segregation / detention on May 12, 2013, based upon a critical incident report of the same date.  *See* DE 26- at 2.  The Special Housing Unit Record shows multiple

14

initials in the medical column, indicating repeated attention from medical

personnel while in segregation.  DE 26-3 at 3, 6, 10, 11.  Also, Plaintiff's plentiful

medical records offer insight into his medical treatment.  DE 26-5, DE 27.  For

example, it seems that Plaintiff offered no complaints at his May 13, 2013 initial

segregation review.  *See* DE 27-1 at 64.  Furthermore, although Plaintiff's dental

summary indicates some "no shows" due to his segregation, it also shows that he

received exams on January 28, 2014 and June 23, 2014.  DE 27 at 4-6.  Clinical

Progress Notes dated October 9, 2013 state, "[i]nmate does not need to be seen by

optometry until May 201[4].  Will recall him for then."  DE 27 at 104.  Plaintiff

received an eye exam on May 7, 2014, at which he obtained a new state

prescription.  DE 27 at 76.  Plaintiff's state eyeglasses were dispensed on June 1,

2014.  DE 27 at 65.  Thus, as the MDOC Defendants' maintain, "Jones has been

offered medical services."  DE 26 at 13.

Also, the factor of whether Plaintiff would otherwise suffer irreparable

injury if the Court did not grant his other requests for injunctive relief – such as

transfer to TCF or the FBOP, adjustment to his security level or confinement

security level and return to the general population - does not weigh in Plaintiff's

favor.  As the Supreme Court has counseled:

> Neither, in our view, does the Due Process Clause in and of itself
> protect a duly convicted prisoner against transfer from one institution
> to another within the state prison system. Confinement in any of the
> State's institutions is within the normal limits or range of custody

which the conviction has authorized the State to impose. That life in
one prison is much more disagreeable than in another does not in itself
signify that a Fourteenth Amendment liberty interest is implicated
when a prisoner is transferred to the institution with the more severe
rules.

*Meachum v. Fano*, 427 U.S. 215, 225 (1976).  "[A]n inmate has no

justifiable expectation that he will be incarcerated in any particular prison

within a State . . . ."  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).

Moreover, a prisoner does not have a constitutional right to be placed in a

particular security classification.  *Ford v. Harvey*, 106 F.App'x 397, 399 (6th

Cir. 2004) (citing *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

Furthermore, even if, *arguendo*, Plaintiff were able to demonstrate

irreparable harm in this case, "any such injury is outweighed by the public

interest" and balancing of the equities factors, and "A proper consideration

of these factors alone [may require] denial of the requested injunctive

relief."  *Winter,* 555 U.S. at 23.  In the instant matter, the balancing of the

equities and the public interest likewise require denial of the requested

injunctive relief.

### c.      Substantial harm: Balancing of the Equities

The MDOC defendants appear to argue that "the alleged, speculative, future

harm" Plaintiff seeks to address is not outweighed by the "harm in granting the

injunction."  DE 26 at 15-17. As previously noted, since the filing of his November

24, 2014 motion for injunctive relief, Plaintiff was transferred to ARF, where the aforementioned May 2013 events took place.  Nonetheless, the Court should conclude that issuance of a preliminary injunction which requires implementation of his medical or transfer requests might cause substantial harm to others.

As the MDOC Defendants argue, "[t]he state's interest in managing its own prisons is substantial . . . ."  DE 26 at 17.  The Court has no doubt that, as the MDOC defendants contend, providing medical care in the prison setting is "a difficult undertaking."  DE 26 at 17.  For example, there are ten (10) MDOC Policy Directives related to Health Care (03.04) and another eleven (11) under the umbrella of Medical and Mental Health Services (04.06).  The Policy Directive concerning "health services" provides:  "Prisoners shall be provided with a continuum of medically necessary health care services that are supported by evidence based medical research."  MDOC PD 03.04.100, effective Feb. 1, 2015.  At this time, the Court should refrain from foraying into the process of deciding when and where Plaintiff should receive medical treatment, particularly where, as here, the plaintiff has failed to meet his burden to demonstrate any substantial and irreparable harm which would be realized by maintaining the status quo.  *See, i.e., Gaybor v. Pugh*, No. 4:14-cv-00318, 2014 WL 4184372, *10 (N.D. Ohio Aug. 21, 2014) (Pearson, J., adopting report and recommendation of Limbert, M.J.) ("issuance of the preliminary injunction may cause substantial harm to others

because it may impact the prison medical facility's ability to treat those requiring immediate medical treatment if Plaintiff is allowed to remain in a medical facility and take a medical placement that another inmate may need."). Nor has he demonstrated that he lacks an adequate remedy at law.

Likewise, the Court is certain that managing prisoner transfers is not a simple task. For example, the appropriateness of one inmate's transfer may involve a ripple effect to another prisoner and/or to the involved institutions. As with the management of medical care, here, too, prison authorities, not the courts, are in the best position to determine the appropriateness of a transfer. *See Dulak v. Corizon Inc.*, No. 14-10193, 2014 WL 4678085, *6 (E.D. Mich. June 9, 2014) (report and recommendation of Hluchaiuk, M.J.) ("Decisions concerning the administration of prisons are vested in prison officials, in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive. The public welfare therefore militates against the issuance of preliminary injunctive relief in the prison context, absent a sufficient showing of a violation of constitutional rights."). The MDOC has a policy directive regarding the placement and transfer of prisoners. *See* MDOC PD 05.01.140, effective Apr. 15, 2015. I have been shown no reason why this Court should second-guess it.

In Plaintiff's case, the MDOC is best-suited to determine whether Plaintiff's transfer requests are justified by MDOC policy *and* reasonable when weighed

against the decisions the MDOC makes during the day-to-day management of the prison population.

### d.    Public interest

The MDOC Defendants assert that "public interest favors allowing state corrections officials to operate prisons as opposed to inmates dictating the day-to-day affairs of a prison."  DE 26 at 17-18.  Here, issuance of the injunctive relief Plaintiff seeks would not serve the public interest, because it would amount to the Court's unjustified operation of prison facilities where decisions related to Plaintiff's medical treatment and transfer are concerned.  *See, i.e., Jarrett v. Snyder*, No. 1:13cv139, 2014 WL 6893229, *5 (W.D. Mich. Dec. 5, 2014) (Quist, J., adopting report and recommendation of Brenneman, M.J.) ("there exists a strong public interest in having the MDOC, rather than this Court, operate religious programming in the state penal institutions and manage the state prison population."); *Wappler v. Brevard*, No. 4:05-cv-90, 2006 WL 3298315, *1 (W.D. Mich. Nov. 14, 2006) (Enslen, J.) ("Nor does the public interest favor the granting of any equitable relief given that federal courts are required to provide state officials with ample freedom to operate prison facilities.").

In describing the deference provided to prison officials in the management of their institutions, the Sixth Circuit has stated that:

because the daily operation of a correctional facility poses difficult and unique management problems, prison official should be accorded substantial deference in the adoption and implementation of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Brown v. Johnson*, 743 F.2d 408, 410 (6th Cir. 1984) (internal quotations omitted). In the present case, Plaintiff has failed to demonstrate that such deference should not be given or that the public interest somehow weighs in his favor.

### E.    Conclusion

In sum, the Court should conclude that evaluation of the preliminary injunction factors does not weigh in Plaintiff's favor and, accordingly, **DENY** Plaintiff's November 24, 2014 motion for a TRO and a permanent injunction.  (DE 17.)

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 14, 2015          s/Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 14, 2015, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti