UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREMAIN JONES #412981,

       Plaintiff,                                          Hon. Janet T. Neff

v.                                                           Case No. 1:16-cv-25

LYNN PARRISH, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 66). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

       Plaintiff is presently incarcerated at the Alger Correctional Facility (LMF). He initiated this action on August 14, 2014, by filing a multi-count complaint against the Michigan Department of Corrections (MDOC) and fifty-one (51) individuals located throughout the state of Michigan.

I.        **Defendants and Correctional Facilities**

       The Bellamy Creek Correctional Facility (IBC) Defendants are: Warden Kenneth McKee, Deputy Warden Scott Schooley, Michigan Parole Board Re-entry Incentive Program Coordinator Jay Kimball, Assistant Resident Unit Supervisors (ARUS) Denise Bolton and Ricky Bradley, Lieutenant

Jay Franks, and Corrections Officers (CO) Lynn Parrish, David Maynard, Sammie Ryans, and Kevin Walker.

The Macomb Correctional Facility (MRF) Defendants are: Warden Kenneth Romanowski, Deputy Warden of Housing and Programs Randall Haas, Deputy Warden of Operations Darrell Steward, Inspector Wright Wade, ARUSs Lisa Walsh and Shaheedah Hardwick, and COs Julie Tolley and Sandra Robinson.

The Gus Harrison Correctional Facility (ARF) Defendants are: Warden Paul Klee, Deputy Warden of Housing and Programs Lee McRoberts, Deputy Warden of Operations Sherman Campbell, Inspector Linda Beckwith, Resident Unit Manager (RUM) Brian Evers, ARUSs Robert Nichols, Gary King, and Sara Stringer-Hill, Captains Douglas Smith and Keith McConnell, Sergeants Robin Howard, David Messer, E. Frye, and M. Long, and COs Ronald Spangler, A. Jones, and Melissa Christiaens.

The St. Louis Correctional Facility (SLF) Defendants are: Warden Steven Rivard, Deputy Warden of Operations Mark McCullick, Litigation Coordinator Kristen Van Haften, Inspectors Robert Stone and Mark Olsen, RUM Susan Havelka, ARUS Forrest Williams, Librarian Jeremy Bugbee, and General Office Assistants Ruth Hall and Debra Evans.

Plaintiff also names members of the Correctional Facilities Administration (CFA) as Defendants: Michigan Department of Corrections (MDOC) Director Daniel Heyns, Regional Prisoner Administrators Michael Curely, Bruce Curtis, and Lloyd Rapelje, and Grievance and Appeals Manager Richard Russell.  Finally, Plaintiff names fellow inmate William Walter Haddix.

**II.        Plaintiff's Claims**

Plaintiff's ninety-one (91) page complaint is divided into twelve (12) separate counts, alleging various claims against different sub-groups of Defendants. The following is a brief summary of the allegations of the counts in Plaintiff's complaint.

   A.     Count I - Fraud

Plaintiff alleges that he suffered a seizure in his cell on October 22, 2011 while housed at IBC (hereinafter the "seizure incident"). According to Plaintiff, he asked CO Parrish to send him for medical treatment, but Parrish refused, noting that the entire prison was on lock-down. Plaintiff alleges that Parrish made this statement with the intent to defraud Plaintiff and induce him to refrain from seeking medical treatment. Plaintiff states that he relied upon Parrish's statement to his detriment and suffered unnecessary pain and discomfort while waiting for the lock-down to be lifted.

   B.     Count II - Denial of Medical Treatment

Plaintiff asserts that Parrish improperly denied him medical treatment following the aforementioned seizure incident.

   C.     Count III - Negligent Misrepresentation

Plaintiff alleges that during the seizure incident Parrish made representations that the prison was on a complete lock-down, thereby preventing him from obtaining timely medical care, despite Parrish's knowledge that the statements were untrue.

  D. Count IV - Breach of Fiduciary Duty

Plaintiff's fourth claim involves two incidents. First, Plaintiff asked Lieutenant Franks if the facility had been on lockdown during the seizure incident, which Franks denied. Franks told Plaintiff he would speak to Parrish about the matter, but failed to do so.

On November 7, 2011, Plaintiff informed Franks that he had lost his identification card in the visiting room. Franks assured Plaintiff that if he could not find the card, he could get a new one without penalty. Plaintiff was then called to Parrish's office, where Parrish chastised him over his decision to discuss with his boss (Franks) the events concerning the seizure incident. Plaintiff reported these statements to ARUS Bradley. Plaintiff's family later filed a formal complaint with the MDOC in response to which Heyns, Curtis, Russell, McKee, Schooley, Bradley, Bolton, Kimball, Maynard, Ryan, and Walker breached their fiduciary duty to Plaintiff by failing to properly investigate the matter.

  E. Count V - Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff asserts that Parrish's failure to provide him with medical care following the seizure incident violated the Eighth Amendment prohibition on cruel and unusual punishment.

  F. Count VI - Denial of Access to the Courts

Plaintiff's sixth cause of action involves events that took place on March 22, 2012, when he was housed at MRF. Plaintiff contends that ARUS Walsh refused to mail his post-conviction appeal to the Michigan Court of Appeals. According to Plaintiff, Deputy Warden Steward and ARUS Hardwick failed to intervene on his behalf, requiring a family member to mail the documents. However, Plaintiff asserts that the documents were torn up when his family member received them.

G.      Count VII - Retaliation

Plaintiff's seventh cause of action relates to his transfers from MRF to ARF and from ARF to SLF. Plaintiff asserts that he was transferred in retaliation for filing grievances. He also describes living conditions at these institutions as "deplorable and unsanitary."

H.      Plaintiff's Remaining Claims

In Count Eight, Plaintiff alleges that the actions described above represent abuse of process as described in Mich. Comp. Laws § 750.360. In Count Nine, Plaintiff asserts that Defendants' actions constituted excessive use of force. In Count Ten, Plaintiff contends that Defendants violated his right to be free from cruel and unusual punishment. In Count Eleven, Plaintiff asserts that Defendants' actions constituted deliberate indifference in violation of his constitutional rights. In his twelfth and final cause of action, Plaintiff alleges that various Defendants participated in racketeering and conversion, and violated Michigan state law by conspiring to interrupt his *pro se* work on his criminal appeal and other civil cases.

Several Defendants subsequently moved to sever on the ground of misjoinder. These requests were granted in part and denied in part. (ECF Nos. 41, 48). Specifically, the following portions of Plaintiff's complaint were dismissed without prejudice: (1) counts six, seven, and nine; (2) counts eight, ten, eleven, and twelve to the extent they do not relate to counts one through five; and (3) "all but the MDOC and Bellamy Creek Correctional Facility Defendants." (PageID.950). On January 13, 2016, the case was transferred to this Court. (ECF No. 59). On March 11, 2016, the remaining Defendants filed a motion for summary judgment on the ground that Plaintiff has not properly exhausted his remaining claims.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the

issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendants have submitted evidence that during the relevant time period, Plaintiff pursued only two grievances through all three steps of the prison grievance process: (1) Grievance IBC-11-11-3231-28c and (2) Grievance IBC-11-10-3010-12d4. (PageID.63-77). Plaintiff does not dispute this assertion. Grievance IBC-11-10-3010-12d4 is asserted against Dr. Gayle Burke, who is not a defendant in this matter. (PageID.1116-21). Thus, this grievance cannot serve to exhaust any of Plaintiff's remaining claims. As for Grievance IBC-11-11-3231-28c, the result is the same.

Plaintiff filed this grievance on November 14, 2011, asserting numerous claims against numerous prison officials. (PageID.1100-15). Plaintiff's grievance was rejected at Step I for failure to comply with MDOC policy that limits prisoners to "one (1) issue per grievance." Plaintiff's grievance was rejected, on the same grounds, at Steps II and III. (PageID.1097-99). As noted above, Plaintiff must comply with the MDOC's procedural rules regarding the proper filing of prison grievances.

Plaintiff failed to do so with respect to this grievance. This grievance, therefore, cannot serve to properly exhaust any of Plaintiff's remaining claims.

Plaintiff attempts to avoid this conclusion by arguing that the procedural rule being enforced in this instance constitutes an improper procedural technicality. Courts have explored the MDOC's "single issue" grievance policy and have concluded that where a grievance advances multiple, yet related, issues or asserts "one claim and multiple harms," application of the "single issue" rule is not appropriate. *See, e.g., Griffin v. Berghuis*, 2016 WL 1165826 at *8 (E.D. Mich., Jan. 3, 2016). On the other hand, where a "grievance contains two completely unrelated issues, it is not proper" and, therefore, it is appropriate to reject such. *See Id.* The grievance in questions contains several distinct issues covering a wide time frame. (PageID.1100-15). For example, the grievance concerns allegations that Plaintiff (1) was denied medical attention, (2) was denied assistance retrieving or replacing a lost ID card; and (3) was subjected to verbal abuse and threats of retaliation. (PageID.1000-15).

In sum, Defendants have satisfied their burden to demonstrate that Plaintiff has failed to properly exhaust administrative remedies regarding the claims remaining in this matter. Accordingly, the undersigned recommends that Defendants' motion be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 66), be **granted**, Plaintiff's remaining claims be **dismissed without prejudice** for failure to exhaust administrative remedies, and this matter **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  July 26, 2016                                             /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge